Good morning, Your Honor. It's my pleasure to court. I'm Manuel Rios, and I represent the petitioners, the Childers family. This is a petition for review from the Board of Immigration Appeals' denial of the petitioners' claims for asylum with holding relief. The petitioners, excuse me, the BIA actually conducted a de novo review of the ID's decision, and therefore the court is going to, is limited to the BIA's decision. The facts of this case are that this is a family of a father and four minor children, natives and citizens of Mexico, who applied for asylum relief based on the leave petition of the father's membership in a leftist political party in Mexico, the PRD. It's a minority party, and the uncontested factual record shows that he suffered past persecution. Mr. Rios, you say that the BIA made a de novo review and came to its own independent judgment in this case. Does that mean that when we review that, we would look at the evidence to see whether a different result is compelled from the result that the BIA found and just sort of disregard the IJ's opinion? That is correct, Your Honor. You know, the agency determination, the final agency determination can only be affirmed on what was stated in the decision. And here the BIA denied the case on two grounds. The first ground was that the petitioners themselves didn't suffer any kind of past persecution. And the second ground was that the petitioners didn't show that internal relocation was unreasonable. And the substantial evidence test does apply. So, you know, our position is that the record does compel the finding of past persecution. Although it looks like there are two issues here, really there's only one issue. The issue is whether or not the record compels the finding of past persecution. And we respectfully suggest that it does. Now, if it does, is what about the BIA's failure to mention whether that persecution was on account of any political opinion or whatever? Your Honor, I agree that this is problematic. However, because the BIA did not specifically address this issue, this case will need to be remanded if the court finds that there was past persecution. If the court finds that there's past persecution, the case would need to be remanded anyway, according to INS de Ventura, because the agency needs to be given a chance to rebut the future pre the future presumption of future persecution based on past persecution, Your Honor, the regulatory presumption here. And then the BIA could also tell us whether or not it was determining that the persecution It said there was no persecution, so it just didn't get to the other two points. But if we were to say, well, the record appears to indicate that there was persecution, but there's a question whether it was on account of or sponsored by the government or whatever. Right. And, Your Honor, I would suggest that the BIA intimated that they conceded it was on account of political opinion, because they went to the next step. Instead of denying it on the basis of the nexus or on account of ground, they went the next step and went to internal relocation. And so if they went to internal relocation, it seems that they assumed that this was indeed on account of political opinion. However, I do concede that they did not specifically address that issue. And if the Court were to find that past persecution were present on the record, that this case would need to be remanded. It would need to be remanded in any event, Your Honor. I suggest that the record compels a finding in four separate avenues. The Court has suggested that persecution may occur. And all four of these that are present here in this case, it compels a finding of past persecution. And these four areas are the pattern of violence against family members. The record shows that Mr. Childress's – four of Mr. Childress's close family members were killed by the opposition party, or were killed at least. We know that. We also know that Mr. Childress himself, contrary to what the BIA has found – Were all four of those members of the PRD? That's what the record shows, Your Honor. And were the – was the person suspected of doing the killing, was he a PRI? That is correct, Your Honor. That's what the record shows. The record also shows, contrary to the BIA's statement, that the petitioners themselves, which is not necessary to prove past persecution as shown by a pattern of persecution against close family members, that the petitioners themselves did not suffer persecution. That's contradicted by the evidence in this case. Mr. Childress testified that he was beaten by the PRI. That's past persecution. This Court has consistently found that physical harm constitutes past persecution. We've got Duarte de Guarnas. He was always – he was also found credible, correct? That is correct, Your Honor. So he's entitled to all of that. That is correct, Your Honor. And that's an important distinction here. Third, threat. Specific and credible threats against a family or the petitioner by themselves can constitute past persecution. So here we've got three things that by themselves may constitute past persecution. In addition, we've got the cooperating country reports in this case. The cooperating country reports show where the state where the petitioner is from, the state of Guerrero, has sporadic political violence. It shows that the PRI has been in power in Mexico since the Mexican Revolution in 1929 until 2000 when President Fox won. That's 61 years. And it also shows that the PRD is a minority party that has suffered and the country reports illustrate at least four separate instances of PRD members throughout Mexico suffering harassment, discrimination, or persecution on account of the PRD membership. So the background reports, the past violence to family members, the threats to Mr. Correa himself, and the physical harm to Mr. Correa compel the finding of past persecution. And this court should find as much. In regards to the issue of internal relocation, although the government has stated that the court can look to the reasonableness of internal relocation to determine eligibility, the cases upon which the government relies have been superseded by regulation as this court has realized and soon be offered. The Quintanilla case, the Diaz case, and the Cuadras case cited by the government in their briefs at 12 to 14 and 18 to 20 all stand for the proposition if they have any viability after the regulations that were promulgated in 1990, if they have any viability after that, they only apply to cases where past persecution was not found. So in this case, if the court were to find that the petitioner suffered past persecution, the court cannot look to the reasonableness of internal relocation. In fact, what will happen, there will be a presumption of eligibility, and the government's burden will then be to show that it was reasonable for the petitioners to relocate or a fundamental change in country conditions. And that's the rub in this case. Really, there's only one issue, and that is whether or not the petitioners showed that they or the records showed that the petitioners have past persecution. Do you want to reserve the balance of your time for rebuttal? Yes, thank you. All right. Thank you. May it please the Court, Connor Dugan for the respondent, Alberto Gonzalez. The position of the government is that a reasonable fact finder would not be compelled to find past persecution or well-founded fear of future persecution in this case. Now, what are we ñ are you taking the position that we're reviewing the BIA or the IJ? I believe, Your Honor, we're reviewing the BIA. It seems to make a de novo review, and it doesn't sayó It certainly doesn't say very much, though. It doesn't say very much. It's sort of the nature of these cases. It simply says, althoughó Well, they don't all look like this. I mean, this is a little shorter than some. It says, although the IJ found that family members had these threats, we find that the petitioners themselves did not suffer persecution. So it would seem that the BIA decided upon the past persecution. But what about theóyou know, you don'tósince he was found credible, even though maybe it seems that there's something a little bit less going on because the IJó I think there is some comment that he doesn't know too much about the party, that he's allegedlyówhat's the PRD? PRD. I guess the PRD. He didn't know that much about it. But still, I mean, having four close family members killed that are members of this party, and since he is assumed credible, and that there's testimony to the effect that there's a relationship of the opposition party being responsible for these killings, those areóyou know, you don't have to be an attempted murder on yourself if it's everyone around you, and that's going on. Your Honor, the government would submit that there's a difference between sort of accepting his subjective assessment of the situation, which will grant as credible, and actually drawing the inference that he does of why these acts happened. Ochave v. INS, a case that we didn't cite, which is at 254 F. 3rd, 859, involved credible accusations by a mother and a daughter of rape. They said it was on the account of political opinion. This Court said that while it agreed that the allegations were horrific, that it didn't have toóthat the IJ was not compelled to find that the subjective sort of inference that the petitioner had made was correct. Which I agree with you, but it becomes more difficult with everyone that gets killed. You know, that'sówhen you have one rape and one assumption about that with four people, and it gets more difficult. I agree, Your Honor. I think that there's record evidence here, though, that would cut towards this occurring because of a family squabble between Mr. Correa's family and the Zarate family. He specifically described tható Does the BIA decision say that? The BIA decision does not say that. If this Court were to sort of go beyond that, go to the IJ decision and look at the nexus question, I think that I would direct you to those portions of the record. But can we? It depends if this Court finds that this was not a de novo review, but in fact that they were adopting portions of the IJ decision. But you just told me it's de novo, and he just told me it's de novo. So although I don't have to justó You wouldn't be able to reach it, Your Honor. I'm suggesting that if this Court's review of the BIA's decision is that this doesn't reach the level that they were simply doing a de novo review, but the IJ's decision is actually sort of adopted in part, then you wouldn't need to reach that. Well, I understand your argument then on the nexus of why you would say that it wouldn't compel another result. But assuming for sake of argument that we didn't agree with that, then what would be the next? Well, we would direct you to sort of the general rule that persecution is directed at an individual. And in this case, Mr. Correa's allegations, we don't think rise to the level of persecution. This Court has said that that's an extreme concept. Here he testified to a beating, which in and of itself is something grave. But he did not testify to any injury resulting from this, and he testified to some sort of general harassment. This Court in Prasad, which we cite for a different proposition in our brief, looked at a beating and a detention that resulted in no medical treatment and said that that was – that did not compel a finding of past persecution. The cases that Mr. Correa cites in his reply brief all deal with sort of repeated beatings and detentions and things like that. And that's not what was at issue here if we look specifically to Mr. Correa himself. If you go beyond that and look at family – attacks and violence against family are generally considered towards the well-founded future persecution, though this Court has in some cases seemed to indicate that those can go towards past persecution. But we would say that the past persecution is more of an individualized assessment, and that you would look at what he says. Well, but did they really do that? I guess that's the whole thing. If you assume that four family members were killed, he says that that was by the PRI, and he's in the PRD, that he himself was beaten, and I think he said he had to hide out or, you know, there were things along those lines. Well, if that's – you know, if the BIA had said, okay, that would – it would be past persecution if you could link it up, but the reason that I think that this happened is that it was a family squabble and this is what really happened. You would be in a better position, but they don't say that. Agreed, Your Honor. And again, it goes to the question whether or not we consider the violence against the family as sort of suggesting that there was persecution of the individual of the petitioners here. If the Court reads it that broadly, then I think what Mr. Rios said during his argument is right, that this case would probably have to be rebanded for the – because the presumption of past persecution would then be – would then apply, and then the government has to – can try to rebut that with evidence that he could relocate within Mexico. And I think it's – I can see that the record isn't – they do discuss relocation, but that it's not really developed enough. I think it's – I guess I think after Ventura, this Court would probably be reluctant to find in our favor on this, but I do think it's developed. Here you have indications that his mother and sisters have been able to relocate safely. The reason that she was – But then he also says it's the women-the-man thing. That's undercut, though, by the fact that he said that – for the reason he relocated his mother. He said there was a threat against his mother. In the reply brief, they say that his mother and sisters never had a threat against him. In fact, his testimony on page 91 of the administrative record is that he had his mother moved because young people were telling him that she was going to be killed. He moved her to another place. They've been able to live there safely since then. That's the first point. The second point is the country report. While it does show some sporadic violence, the – if you turn to administrative record, page 103, you'll see that the violence there described against PRD members is against activists and leaders. And I don't think anything in the record suggests here that Mr. Correa is – would fall within that category. You also have the changed circumstances after the 2000 election where Mr. Fox was elected and the PRI is no longer in power. So I think those things together would suggest that the record has been developed and the government has sort of met its burden to rebut the – if one presumes that past – you know, the past persecution has been found and the presumption that he has a well-founded fear of future persecution. So I think those things together would suggest that we have met the burden. It comes down to whether or not this Court thinks the remand is necessary or whether or not we would want to decide simply on that which is in the record. Thank you. No further questions.  Your Honor, case law teaches us that we need to look at – the Court needs to look at persecution in the totality of the circumstances here. We're not talking about a threat or, you know, maybe an isolated incident of one meeting. What we're talking about is over a 14-year period or 15-year period, we've got four relatives being killed – four close relatives being killed. We've got physical harm happening to the lead petitioner. We've got ongoing threats over – ongoing specific threats over a long period of time. We've got country reports that corroborate this. The record does compel a finding. In fact, this case is even stronger than the Navas case. In Navas, the Court held that unquestionably the petitioner in that case demonstrated past persecution where the evidence showed that he was threatened and two family members were killed. The petitioner was shot at and his mother beaten. Here we've got four family members killed, the petitioner himself beaten,  and the country reports that show that the PRD is a disfavored group in Mexico. As far as the – on the account of Prong, I believe that this Court can't decide that under INS v. Ventura, that the agency has to be given the opportunity to decide that at the first instance, and that's what Ventura teaches. So therefore, if the Court were to find that, the Court under the Supreme Court decision in Ventura should remand this case. All right. Thank you both for your argument. This matter will now stand submitted.
judges: Thompson, Tashima, Callahan